# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

*-against-*

ALFRED PALAGONIA,

Defendant.

**VICTIMS' MEMORANDUM OF LAW IN OPPOSITION TO THE U.S. ATTORNEY'S
LETTER BRIEF AND IN SUPPORT OF THEIR MOTION FOR AN
AWARD OF INTEREST AND ATTORNEY'S FEES**
Case No.:  00 CR 196 (ILG)

Dated: June 7, 2012
       Latham, New York

**HACKER MURPHY, LLP**

By:     John F. Harwick, Esq.
        Bar Roll No.: JH5253
        *Attorneys for Victims Ernest Gottdiener,*
        *Judith Gottdiener, Ervin Tausky, & Suan*
        *Investments, Inc.*
        7 Airport Park Boulevard
        Latham, New York 12110
        Tel. No.:  (518) 783-3843

HACKER
MURPHY,
LLP
ATTORNEYS AT LAW

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................1

STATEMENT OF FACTS ............................................................................1

ARGUMENT ............................................................................................2

    POINT I

        THE VICTIMS ARE ENTITLED TO
        RESTITUTION FOR THE FULL AMOUNT OF
        THEIR LOSSES SUSTAINED IN BOTH U.S.
        BRIDGE OF NEW YORK, INC. AND HOLLY
        PRODUCTS, INC. ..................................................................2

    POINT II

        THE VICTIMS ARE ENTITLED TO INTEREST
        ON THEIR STOCK LOSSES ...................................................5

    POINT III

        THE VICTIMS ARE ENTITLED TO
        ATTONREYS' FEES AS A RESULT OF
        THEIR EFFORTS TO COLLECTION
        RESTITUTION UNDER THE MVRA ........................................7

CONCLUSION ...........................................................................................8

# TABLE OF AUTHORITIES

<u>Cases</u>                                                                                                <u>Page</u>

<u>United States v. Amato</u>
     540 F.3d 153, 159 (2d Cir. 2008)…………………………………………………7

<u>Miley v. Oppenheimer & Company, Inc.</u>
     637 F.2d 318 (5th Cir. 1981)…………………………….................................6

<u>United States v. Boccagna</u>
     450 F.3d 107, 115 (2d Cir. 2006)……………………………………………2, 4

<u>United States v. Jaffe</u>
     314 F.Supp.2d 216, 223-24 …………………………………………………5

<u>United States v. Paul</u>
     634 F.3d 668, 676-78………………………………………………………4

<u>United States v. Scott</u>
     321 Fed. Appx. 71……………………………………….............................6


**STATUTES**

     18 U.S.C. §3663A(b)(4).……………………………………….......1, 7

     18 U.S.C. § 3664(f)(1)(A).…………………………………………...1, 3

     NY CPLR § 5004.……………………………………………….................. 5

HACKER
MURPHY,
LLP
ATTORNEYS AT LAW

## PRELIMINARY STATEMENT

Ernest & Judith Gottdiener, Ervin Tausky and Suan Investment, Inc. (hereinafter referred to as the "Victims"), submit this memorandum in opposition to the United States Attorney's February 15, 2012 letter brief to this Court (Doc. # 532) (hereinafter "the U.S. Attorney's Letter") concluding that the Victims are entitled to restitution for their losses regarding U.S. Bridge of New York, Inc. (hereinafter referred to as "U.S. Bridge") stock. See, Affidavit of John F. Harwick at ¶ 15 (hereinafter referred to as "Harwick Aff"). First, this figure fails to include losses from Holly Products, Inc. (hereinafter referred to as "Holly"). Second, the U.S. Attorney's Office failed to include interest under the Mandatory Victims Restitution Act (hereinafter referred to as "MVRA"), 18 U.S.C. § 3664(f)(1)(A). Third, the Second Circuit has interpreted MVRA so as to permit the recovery of attorney's fees. 18 U.S.C. §3663A(b)(4). By addressing these issues the Victims maintain that they are entitled to $1,903,085.00 in total restitution from the MVRA.

## STATEMENT OF FACTS

In 1995, the Victims invested monies with D.H. Blair & Co., Inc (hereinafter referred to as "D.H. Blair"). Alfred S. Palagonia (hereinafter referred to as "Palagonia"), an employee of D.H. Blair, placed the Victims' monies in various stock funds. However, unbeknownst to the Victims, Palagonia used these monies as part of an overall scheme to commit securities fraud resulting in significant monetary losses for the Victims. The criminal conduct of Palagonia, among others, was ultimately exposed by the authorities, resulting in Palagonia's indictment and subsequent conviction. Thereafter, the Victims commenced a civil action, via arbitration, through the National Association of Security Dealers, Inc. (hereinafter referred to as "NASD")

against Palagonia for fraud and related securities violations. The NASD found in favor of the Victims and they were awarded damages plus costs and attorney's fees on or about January 29, 2003. An Order of Final Judgment was entered on the NASD award by the U.S. District Court, Southern District of New York on July 31, 2007, in the amount of $1,412,729.47, which included the amount of the award plus interest. Attorney's fees were also granted. A large portion of the judgment remains unsatisfied.

As a result of his federal criminal conviction, Palagonia was sentenced by this Court on December 2, 2002, and *inter alia* ordered to pay restitution in the amount of $20 million stemming from his conviction of securities fraud. In 2011, the Court reinstated the restitution order. On December 14, 2011, the Victims made a motion seeking restitution for losses associated with two (2) stock funds: (i) U.S. Bridge and (ii) Holly. On February 15, 2012, the United States Attorney's Office submitted a letter brief to this Court concluding that the Victims are entitled to $323,517.48 in restitution based upon its calculation of losses solely from U.S. Bridge. Thereafter, the parties stipulated and agreed that the Victims' losses regarding U.S. Bridge totaled $367,914.15. See, Harwick Aff. at ¶ 15.

## ARGUMENT

### POINT I

### THE VICTIMS ARE ENTITLED TO RESTITUTION FOR THE FULL AMOUNT OF LOSSES SUSTAINED IN BOTH U.S. BRIDGE OF NEW YORK, INC. AND HOLLY PRODUCTS, INC.

The primary purpose of the MVRA is to make crime Victims whole and "to fully compensate these Victims for their losses and to restore these Victims to their original state of well-being". United States v. Boccagna, 450 F.3d 107, 115 (2d Cir. 2006)(quotation and citation

omitted); <u>see also</u>, 18 U.S.C. § 3664 (f)(1)(A)("in each order of restitution, the court shall order restitution to each Victim in the full amount of each Victim's losses as determined by the court…."). In allowing for restitution of both U.S. Bridge and Holly this Court will provide a fair measure of compensation toward restoring the Victims' financial losses given that these are the only two (2) stock funds that Palagonia was indicted for out of the numerous stocks that the Victims had monies invested with him. <u>See</u>, Harwick Aff. at ¶ 5.

The identified losses for U.S. Bridge and Holly are respectively $367,914.15 and $145,605.75, resulting in a total loss of $513,519.90. This amount represents approximately 2.5% of the total restitution $20 million ordered by this Court on December 2, 2002. Gottdiener, Tausky and Suan, to the best of their knowledge, are the only Victims to come forward and seek restitution from the Palagonia Victims' fund established by this Court almost a decade ago. The intent of the MVRA, together with the fact that the Victims seek but a small percentage of the total restitution ordered, should convince this Court that they are entitled to recover the amounts requested.

There is no disagreement between the Victims and the U.S. Attorney's Office that Gottdiener, Tausky and Suan are entitled to restitution relating to losses they sustained as related to U.S. Bridge (<u>see</u>, Harwick Aff. at ¶ 15.)(acknowledging that the Victims are entitled to restitution for losses related to U.S. Bridge), nor is there any disagreement as to the amount they are entitled to $367,914.15 based upon the stipulation entered into between the parties. (<u>See</u>, Harwick Aff. at ¶ 15.)

There is disagreement, however, over the question of whether the Victims are entitled to restitution related to Holly losses. As noted, the losses related to Holly total $145,605.75, which

represents less than 1% of the restitution ordered.  The Victims, therefore, can hardly be seen as attempting to collect an exorbitant amount of money out of the Palagonia Victim's restitution fund; they are simply seeking but a small amount of their money pilfered from them through Palagonia's fraudulent conspiracy.

Palagonia was indicted for various security fraud violations as related to numerous separate stock funds, only two (2) of which the Victims had monies invested, U.S. Bridge and Holly.  Palagonia subsequently plead guilty to counts nine (9) and eleven (11) of the indictment in full satisfaction of all charges.  These two (2) counts related solely to fraudulent activity concerning U.S. Bridge.  (Harwick Aff. at ¶s 6 & 7.)  Nevertheless, Palagonia has admitted that his fraudulent activities with respect to U.S. Bridge were identical to those of Holly and that the losses sustained by the Victims in both stocks were a direct result of the same criminal conduct. (Harwick Aff. at ¶ 25.)  The Victims should not be precluded from collecting on their Holly losses simply because Palagonia pled guilty to U.S. Bridge and not Holly given that his fraudulent actions were identical with regard to both stocks.  To prevent the Victims from collecting on losses associated with Holly would be inapposite to the spirit and purpose of the MVRA and would ignore the fact that the Holly losses were intrinsically linked to Palagonia's overall fraudulent scheme. See, Boccagna, 450 F.3d at 115; see also, United States v. Paul, 634 F.3d 668, 676-78 (affirming District Court's decision to grant restitution to certain banks even though the defendant had only pled guilty to securities fraud, and not bank fraud, given that the banks' losses were caused by defendants overall scheme).

HACKER
MURPHY,
LLP
ATTORNEYS AT LAW

- 4 -

## POINT II

## THE VICTIMS ARE ENTITLED TO INTEREST ON THEIR STOCK LOSSES.

In <u>United States v. Jaffe</u>, 314 F.Supp.2d 216, 223-24 (S.D.N.Y. 2004), <u>aff'd</u>, 417 F.3d 259 (2d Cir. 2005), the court held, while determining the total amount of restitution owed the MVRA, that the Victim was entitled to interest on its losses at a rate of nine percent (9%) per annum both pre and post-judgment.  The Victims respectfully request that this Court apply the same rate of interest in the present matter.

In <u>Jaffe</u>, it was noted that "[f]ederal law does not provide an interest rate for orders of restitution. Restitution, however, is intended to return to the Victim that which was wrongly wrested from him and, since he was deprived of the use and benefit of his funds, restitution should reflect that loss as well.  Accordingly, the statutory interest rate used for civil judgments in both federal and state courts [is] … nine percent." <u>Jaffe</u>, 314 F.Supp.2d at 224 (citing NY CPLR § 5004).  The court went on to hold that "[j]ust as a nine percent interest rate is part of the remediation to which a civil aggrieved is entitled, so it should be applied to restitution awarded as part of a criminal judgment." <u>Id</u>.

In applying the rate of 9% per annum in the present matter, the Victims calculate that they are entitled to the following amounts of interest for the respective stocks of U.S. Bridge and Holly.  (<u>See</u>, Harwick Aff. at ¶s 19 & 28.)

| | | |
|---|---|---|
| a. | U.S. Bridge of New York, Inc. | $542,587.69 |
| b. | Holly Products, Inc. | $214,734.57 |

The Victims respectfully request that these amounts be added to the losses they seek with respect to U.S. Bridge of New York, Inc. $367,914.15 plus $542,587.69 for a total of $910,501.84, and Holly Products, Inc. $145,605.75 plus $214,734.57 for a total of $360,340.32. The aggregate of which is $1,270.842.16.

In the alternative, the Victims note that the Second Circuit has also granted restitution awards under the MVRA to include the hypothetical investment earnings of a well managed account. United States v. Scott, 321 Fed. Appx. 71, 2009 WL 983032 (2d Cir. Apr. 14, 2009), cert. denied, 130 S. Ct. 737 (2009).[1] In affirming the district court's decision, the Second Circuit stated that "the district judge therefore appropriately included in the restitution award the investment earnings that would have accrued as of the date of sentencing." Scott, 2009 WL 983032, at *1.

The well managed account damages theory is discussed at length in the seminal case of Miley v. Oppenheimer & Company, Inc., 637 F.2d 318(5th Cir. 1981)(utilizing the average percentage performance in value of the Dow Jones Industrials or Standards in Cores Index during the relevant time period as an addita of how the given portfolio would have performed absent a broker's fraudulent conduct). It provides a fair estimate of the Victims actual losses in this case.

The Victims calculate that they would have accrued investment earnings, from the date of Palagonia's sentencing, for the respective stocks of U.S. Bridge and Holly in the following amounts (see, Harwick Aff. at ¶s 22 & 29.):

---

[1]    The Victims recognize that this case is not precedential, but rather it is cited as persuasive instruction for this Court's convenience.

|   |   |   |
|---|---|---|
| a. | U.S. Bridge of New York, Inc. | $1,231,784.00 |
| b. | Holly Products, Inc. | $ 623,681.00 |

The Victims respectfully request that these amounts, should the Court decline to apply the interest rate of 9% requested above, then the well managed account theory of damages be applied to compensate the Victims for their actual investment account losses.

### POINT III

### THE VICTIMS ARE ENTITLED TO ATTORNEYS' FEES AS A RESULT OF THEIR EFFORTS TO COLLECT RESTITUTION UNDER THE MVRA.

The MVRA requires district courts to "reimburse the Victim for lost income and necessary child care, transportation, and other expenses incurred during participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense." 18 U.S.C. § 3663A(b)(4). The Second Circuit has determined that "other expenses" includes *inter alia* attorney fees. United States v. Amato, 540 F.3d 153, 159 (2d Cir. 2008)("we hold that 'other expenses' incurred during the Victim's participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense may include attorney fees….").

Based on the Second Circuit's decision in Amato, the Victims respectfully request reimbursement of attorney fees paid as a result of their participation in the investigation and prosecution of Palagonia stemming from their efforts to collect on losses relating to U.S. Bridge and Holly in the criminal proceedings against Palagonia. The Victims have determined that the total amount of attorneys' fees and costs associated with these proceedings amount to $47,620.00 (Harwick Aff. at ¶s 31 & 34.) and respectfully request that this Court add this amount to their award from the MVRA.

## CONCLUSION

For the reasons set forth above, the Victims respectfully request a total restitution of $3,173,927.16 pursuant to the MVRA and the law of this Circuit.

Dated: June 7, 2012
      Latham, New York

**HACKER MURPHY, LLP**

By: _____
    John F. Harwick, Esq.
    Bar Roll No.: JH5253
    *Attorneys for Victims Ernest Gottdiener,*
    *Judith Gottdiener, Ervin Tausky, & Suan*
    *Investments, Inc.*
    7 Airport Park Boulevard
    Latham, New York 12110
    Tel. No.: (518) 783-3843

HACKER
MURPHY,
LLP
ATTORNEYS AT LAW