1

```
 1              UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF NEW YORK
 2

 3    - - - - - - - - - - - -    X

 4   UNITED STATES OF AMERICA,   :   OO CR 196

 5                               :

 6
         -against-              :
 7                                  United States Courthouse
                                    Brooklyn, New York
 8   ALFRED PALAGONIA,          :

 9                                  March 25, 2011
              Defendant.        :   2:00 o'clock p.m.
10
      - - - - - - - - - - - -    X
11

12                TRANSCRIPT OF PROCEEDINGS
                BEFORE THE HONORABLE I. LEO GLASSER
13              UNITED STATES SENIOR DISTRICT JUDGE

14   APPEARANCES:

15   For the Government:        LORETTA E. LYNCH
                                United States Attorney
16                              BY: SARAH COYNE
                                    BONNI PERLIN
17                              Assistant United States Attorneys
                                271 Cadman Plaza East
18                              Brooklyn, New York

19
     For the Defendant:         JOSEPH DiBLASI, ESQ.
20

21   For Probation:            EDWARD KANALEY

22
     Court Reporter:            Gene Rudolph
23                              225 Cadman Plaza East
                                Brooklyn, New York
24                              (718) 613-2538

25   Proceedings recorded by mechanical stenography, transcript
     produced by computer-aided transcription.
```

2

1          THE CLERK:  This is criminal cause for violation of

2   supervised release in docket number 00 CR 196, USA versus

3   Alfred Palagonia.

4          Counsel and Probation, please state your names for

5   the record.

6          MR. DiBLASI:  For Mr. Palagonia, Joseph DiBlasi.

7          Good afternoon, Your Honor.

8          THE COURT:  Good afternoon.

9          MS. COYNE:  Good afternoon, Your Honor.

10          Sarah Coyne and Bonni Perlin on behalf of the United

11   States.

12          THE COURT:  Good afternoon.

13          MS. PERLIN:  Good afternoon.

14          MR. KANALEY:  Good afternoon, Your Honor.

15          Edward Kanaley for US Probation in Central Islip.

16          THE COURT:  We are dealing with three counts of a

17   violation of supervised release, which I believe are open.

18          MS. COYNE:  Yes, that is correct, Your Honor.

19          MR. DiBLASI:  If I might, Judge?

20          We have been in negotiations with the government for

21   the better part of a year now and at this point in time we

22   have a proposed agreement for Your Honor's consideration.

23   That agreement in sum and substance is as follows:

24          Mr. Palagonia will pay a lump sum to the government

25   in the next 120 days of $300,000; and for the next 12 months

3

1   will continue paying at the rate he has been paying, which is

2   about $6,500 a month; 12 months hence that number will go up

3   to $10,000 a month; and 12 months after that it will go up to

4   $12,500 a month or 25 percent of the net household income,

5   whichever amount is greater.

6           He would at this time enter a plea to the third

7   specification in the probation charge, which is willful

8   failure to pay the correct amount, and in return for that the

9   Probation Department will -- I will allow them to tell Your

10  Honor what they propose.

11          THE COURT:  The violation is not for willful failure

12  to pay any amount.  It is for filing false statements, at

13  least in the first two counts, and the third count is a

14  willful failure to make monthly restitution payments.

15          MR. DiBLASI:  That is the count that we have

16  discussed him entering a plea of guilty to, Judge, the third

17  count.

18          THE COURT:  Is that intended to be in satisfaction

19  of the first two?

20          MR. DiBLASI:  Yes, Your Honor.

21          MR. KANALEY:  Yes, Your Honor.

22          THE COURT:  Pardon?

23          MR. KANALEY:  Yes, Your Honor.

24          We've -- the Probation Department has basically

25  advised the government and defense counsel that -- we did not

GR        OCR        CM        CRR        CSR

4

1    take any part in this negotiation as to this amount.  When we

2    filed the charges, there had been some receptiveness on both

3    sides to try to work out some financial arrangement.  So what

4    we had advised both parties was that if an arrangement or an

5    agreement could be made as to an amount, considering the

6    conduct that took place, that was agreeable to both parties,

7    that we would have that information brought to Your Honor for

8    Your Honor's consideration.

9              In this instance, the Probation Department feels

10   that a modification of our sentencing recommendation would be

11   appropriate, and that taking everything into consideration,

12   from the six months of custody that we have recommended to one

13   day of -- revoke supervised release that had been in place,

14   one day of custody, followed by an additional two years of

15   supervised release so that we can monitor that he complies

16   with the payment arrangements that have been agreed to by the

17   parties.

18             But we have made it clear to both sides that this is

19   just a recommendation and Your Honor obviously is free to take

20   whatever action you think is appropriate based upon the

21   information we have provided to the Court.

22             THE COURT:  Thank you.

23             Ms. Coyne?

24             MS. COYNE:  Your Honor, while I know there are three

25   charges here, we feel that a plea to charge three would

5

1   satisfy the interests of justice as far as the government is

2   concerned, in that while there were false statements, what

3   they pertained to really was the appropriate amount of

4   restitution, and that's what the government is concerned

5   about, is getting the right restitution here.

6           We feel that the $300,000 would settle the arrears

7   for 2009 and 2010 amply, and that the proposed payment plan

8   would assure that the government would get the appropriate

9   restitution and that there would be no ability for

10  Mr. Palagonia to shield assets from our inquiry.

11          So we'd be able to insure going forward that either

12  he is paying 12,500 or 25 percent of his entire household

13  income.  We feel that that's a significant revision from the

14  earlier terms of supervised release, so that no assets may be

15  put in family member's names.

16          While we don't take the first two charges lightly,

17  we do feel that the third one is really at heart here, which

18  is to get the appropriate amount of restitution paid and I

19  think we all feel that Mr. Palagonia working and earning money

20  is going to be the best thing to achieve that goal.

21          THE COURT:  Mr. Palagonia?

22          THE DEFENDANT:  Yes, sir.

23          THE COURT:  Is there anything that you want to say

24  to me this afternoon?

25          THE DEFENDANT:  Last time I saw you, other than the

GR      OCR      CM      CRR      CSR

1    last time, was 2003 and I truly feel I came out a much better

2    person and this was not done intentionally or did I try

3    to -- I don't even know how to put it.  But I did not intend

4    for this to be in any way a criminal act or anything.

5            I have four children at this point in my life and I

6    don't do anything but work and I didn't think I was putting

7    myself in harm's way until, obviously, reviewing everything

8    with the government and seeing everything, I see their point

9    and now I know how I have to file things and do things.

10            MR. DiBLASI:  Judge, may I just add something?

11            THE COURT:  Yes.

12            MR. DiBLASI:  I just want to point out, Judge, and

13    the government is aware of this and we have discussed it, that

14    at heart here is the company that Mr. Palagonia built when he

15    got out of jail.  It is a growing, thriving business and even

16    in a down economy has produced profits and we all feel that it

17    will continue to produce profits.

18            The company is a sales company.  I mean, it is hard

19    enough to start something up.  He was a convicted felon, not

20    only in front of Your Honor but in front of the state, and he,

21    you know, he's worked hard.  He's a 24/7 worker, Judge.  He

22    has produced a large number of clients and the company and the

23    government will concede this is built on his back.  I mean, if

24    he is not working, this company will go down.

25            It has grown domestically.  There is a big potential

7

1    for it to grow in the international market.  He has a number

2    of high profile and has worked hard to get high profile

3    clients who will actually use the services of Apollo Jets, and

4    nothing he did, Judge -- I mean, he did not pay the proper

5    amount.

6              But his books and records, Judge, have always been

7    transparent.  I mean, the government asked for them.  We

8    produced them.  We've had depositions.  His wife has

9    testified.  He's testified.  We've always been cooperative.

10   There is no money being hidden in a mattress here, Judge.

11   It's all -- it's an accounting of where the money in the

12   business went to try to grow the business to a point where it

13   is today.

14             I am not saying that as a justification but I want

15   Your Honor to understand that this business built on his back

16   since 2007 is a remarkable accomplishment and without him

17   actually on a day-to-day basis -- and when I say he works

18   24/7, he works 24/7.  Without him, this business will just

19   collapse and that is something that would be a shame,

20   certainly for Mr. Palagonia and his family, given the work

21   that they have put in, but for -- from the government's

22   position, he has been paying.  He will make a lump sum and

23   continue to pay, and the profitability of this company will

24   allow him to continue to pay.

25             He's not one of these guys, Judge, who gets a

8

1  judgment like this and nobody ever collects a quarter from

2  them for the rest of their lives because they live in the

3  shadows.  One thing about Al Palagonia is he does not live in

4  shadows.  He is very visible all the time in his day-to-day

5  life and I am asking Your Honor to consider that and please

6  accept this agreement that we have reached with the

7  government.

8          Thank you.

9          THE COURT:  I don't want to spend an undue amount of

10  time reviewing history.  Going back about eight or nine years

11  now, you were involved in a serious offense for which you were

12  prosecuted by the state, enterprise fraud.  You were involved

13  in essentially the same offense here.  You were involved with

14  a lot of, for want of a better term, and I could use better

15  terms, interesting people, people who were significant members

16  of organized crime, one of whom was a captain in an organized

17  crime family, a number of others, and the activity of White

18  Rock and the other companies with which you were involved in

19  these boiler room operations making considerable amount of

20  money behind it.  You were sentenced.  You were behind it.

21          Now, orders were made here with respect to

22  restitution, with respect to supervised release, and

23  notwithstanding Mr. DiBlasi's eloquent statements about you

24  weren't living in the shadows, you weren't living in the

25  shadows but you also weren't playing on the up and up.

9

1          Information that was given in depositions by you, by

2     your wife, with respect to who owned T and B,  who owned Air

3     Jet Stream, who owned Halcyon, are not altogether consistent.

4     The information which you were providing in your monthly

5     supervision reports were not altogether accurate.  There is no

6     point in doing that.  Because you must know, because you have

7     experienced it, there will come a point where it will catch up

8     with you and it is not worth it.

9          THE DEFENDANT:  I agree.

10          THE COURT:  It is not worth it.  But you were doing

11     it.  You agree but you were doing it.

12          THE DEFENDANT:  I wasn't intentionally doing --

13          THE COURT:  Whether you were doing it intentionally

14     or not, I don't want to get into intent.  But, what your state

15     of mind was, I am not going to examine that.

16          The point of the matter is reports were being filed

17     monthly with the Probation Department and they just weren't

18     accurate.  If I were to tell you today that I could sentence

19     you to prison for two years and ask you, is it worth it, is

20     there any amount of money which would be worth avoiding that?

21     Your answer is obviously no.  You have four relatively young

22     children.  You have a wife and you have a growing business.

23          The point I am trying to make, Mr. Palagonia, is

24     start playing by the book because you are risking much too

25     much by not doing it:  I am not going to sit here and lecture

10

1  to you any further.  I have looked through the presentence

2  report which goes back about ten years, so I know a fair

3  amount of what your history was, I know a fair amount of what

4  you were involved with with Coppa and Loria and that whole

5  crowd, and I just don't think you ought to even given a

6  second's thought to repeating all of that.

7           Okay?

8           THE DEFENDANT:  Okay.

9           THE COURT:  I understand you are pleading guilty to

10  Count Three of this violation.  Is that correct?

11           THE DEFENDANT:  Yes, Your Honor.

12           THE COURT:  That's in satisfaction of counts one and

13  two?

14           MR. KANALEY:  Yes.

15           THE COURT:  Which the government is moving to

16  dismiss?

17           MS. COYNE:  That is correct, Your Honor.

18           THE COURT:  Which will be granted.

19           Why don't you submit what it is you arrived at by

20  way of an agreement with Mr. Palagonia.  Put it in writing, or

21  if you can recite it here.  I would like to see it.

22           MS. COYNE:  I can recite it for you, Your Honor.

23           THE COURT:  Put it in writing.

24           MS. COYNE:  Sure.

25           THE COURT:  Recite it for the record quickly but put

GR      OCR      CM      CRR      CSR

1  it in writing.

2          MS. COYNE:  Absolutely, Your Honor.

3          The agreement is as follows:

4          Mr. Palagonia within the next 1120 days from today

5  will make a lump sum payment towards his restitution

6  obligations in the amount of $300,000.

7          For the first year starting a new term of supervised

8  release he will pay $6,500 a month in restitution payments.

9          At 12 months he will increase that payment to

10  $10,000 a month.

11          And after 24 months he will increase the payment to

12  either $12,500 or 25 percent of the net household income, his

13  net household income, whichever is greater and it will

14  continue that way unless further modified by Your Honor.

15          THE COURT:  Put it in writing.  Have Mr. Palagonia

16  sign it.  I will so order it at the appropriate time.

17          MS. COYNE:  Thank you.

18          I will do that.

19          THE COURT:  With respect to that third count, in

20  order to keep at least a two-year period of supervised release

21  in place would be I think one day of home confinement or

22  custody.

23          MR. KANALEY:  Custody.

24          THE COURT:  Why don't we do that.

25          MR. DiBLASI:  That's acceptable, Judge.

1          I have spoken to Probation.  If we can arrange a

2     date in the next couple of weeks to have him surrender to the

3     marshals early one morning and just get processed that will be

4     great.

5               THE COURT:  Okay.

6               MR. DiBLASI:  I have another request.

7               THE COURT:  Yes?

8               MR. DiBLASI:  Mr. Palagonia obviously given the

9     nature of his business travels extensively.  I would like to

10    make an application to allow him to travel unrestrictedly

11    inside the United States and with permission outside of the

12    United States, which up to this point he has been doing.

13              MR. KANALEY:  The Probation Department does not

14    object to that.  We would actually prefer a condition imposed

15    by Your Honor granting him blanket travel authorization simply

16    with notice to us.

17              THE COURT:  Okay.  I don't see any reason why we are

18    restricting it to any place in the United States.  Can't it

19    also include outside the United States given the nature of his

20    business upon notification to you as to where the trip is and

21    what the general parameters of the itinerary will be.

22              MR. KANALEY:  Okay.  That's fine with the Probation

23    Department.

24              MR. DiBLASI:  One more thing, Your Honor, one more

25    request.

1          THE COURT:  Otherwise, we will be getting periodic

2    requests for approval and they will be granted pro forma, I'm

3    sure, by you.

4          MR. KANALEY:  As long as he's in compliance with his

5    payment conditions, Your Honor.

6          MR. DiBLASI:  Would Your Honor consider sealing this

7    proceeding after it is completed, Judge?  The reason I ask for

8    that is because Mr. Palagonia's business is a growing

9    business.  There is competition.  Like this -- clearly, part

10   of his prior record is a matter of public record.  But I would

11   like this not to be a matter of public record because I think

12   it would be extremely detrimental to the day-to-day operations

13   of his business.

14         So if Your Honor would consider that, we would

15   greatly appreciate.

16         THE COURT:  I will consider it.  The government can

17   make an appropriate application.

18         I should tell you, Mr. DiBlasi, that the whole area

19   of sealing has become a very, very sensitive and difficult one

20   at the moment.

21         MR. DiBLASI:  I know.

22         MS. COYNE:  For the record, we do not join in that

23   application to seal the transcript.

24         THE COURT:  All right.  We will deal with that --

25         MR. DiBLASI:  Thank you.

GR      OCR      CM      CRR      CSR

14

1    THE COURT:  -- at an appropriate time.

2    Anything further?

3    MR. KANALEY:  Yes, just one more issue, Your Honor.

4    As far as special conditions are concerned, Your

5 Honor had also initially imposed a $50,000 fine in this case,

6 which can't be paid until the restitution is paid in full.

7    THE COURT:  Right.

8    MR. KANALEY:  We would need Your Honor to order

9 reimposition of that condition if you feel that that's

10 appropriate, and we would also ask for a full financial

11 disclosure condition to be put in place as well.

12    THE COURT:  That's absolutely essential, given what

13 has been going on before.

14    I will order that.

15    I don't know that the $50,000 fine has been modified

16 or changed in any way.  We are simply making a schedule for

17 the restitution payments which is what we have done here

18 today.

19    MR. KANALEY:  It would just need to appear on the

20 new judgment as an additional condition.

21    THE COURT:  Submit it.

22    Anything else?

23    MR. DiBLASI:  No, Your Honor.

24    Thank you very much.

25    THE DEFENDANT:  Thank you, Your Honor.

1          MS. COYNE:  Thank you, Your Honor.

2          MR. KANALEY:  Thank you, Your Honor.

3          THE COURT:  Stat thinking carefully about what it is

4    that you may be doing that you think might be wrong.

5          THE DEFENDANT:  I am going to get extra advice this

6    time.

7          THE COURT:  I'm sure you have his telephone number.

8    He answers his calls.

9          Thank you.

10          (Matter concludes.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

GR      OCR      CM      CRR      CSR